UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| EFRAIN CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:05-CV-508 CAN |
| | ) | |
| JOHN-JAY CORPORATION, INC., | ) | |
| d/b/a SPX CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

**ORDER AND OPINION**

On July 27, 2005, Plaintiff Efrain Cruz (Cruz) filed a complaint alleging he was terminated because of his national origin in violation of Title VII.  On August 28, 2006, Defendant John-Jay Corporation, Inc., d/b/a/ SPX Corporation (SPX) filed a motion for summary judgment.  On that same day, Cruz filed his response and SPX filed its reply.  Both parties also filed motions to strike.  The Court now enters its rulings on all pending matters in this case.

**I.    PROCEDURAL HISTORY**

On March 23, 2005 Cruz filed a charge of discrimination with the EEOC alleging he was terminated based on his national origin, Puerto Rican.  (Dep. of Efrain Cruz 259-60).  Cruz asserts that he was terminated because he was trying to move to the day shift, which would have caused a Caucasian to lose his job on the day shift.  (Plaintiff's App. 49, Dep. of John Blagojevic 44).  On June 24, 2005, the EEOC issued Cruz a right to sue notice.  On July 27, 2005, Cruz filed his complaint in state court.  On August 22, 2005, this case was removed to this Court.  On August 28, 2006, SPX filed a motion for summary judgment.  On that same day, Cruz filed his response, and SPX filed its reply.

Additionally, on August 28, 2006, Cruz filed a motion to strike parts of the affidavits SPX used in its summary judgment motion, and SPX filed a motion to strike affidavits and portions of affidavits that Cruz used in his response to SPX's motion for summary judgment. On that same day, both parties filed their respective replies  This Court may rule upon these motions pursuant to the parties consent and 28 U.S.C. § 636 (c)(1).

    A.    <u>Cruz's  Motion to Strike</u>

Cruz seeks to strike parts of the affidavits of both Lisa Gaff (Gaff) and Iris Truitt (Truitt) because the parts are hearsay and inadmissable. Specifically, Cruz seeks to strike paragraphs, 11, 14, 15, and 20 of Gaff's affidavit and paragraphs 4, 5, and 9 of Truitt's affidavit. However, this Court need not address whether these paragraphs are hearsay. This Court has not considered any of the paragraphs Cruz seeks to strike in making its ruling.[1]  Every paragraph Cruz alleges is hearsay is repeated by the actual declarant in another deposition or affidavit SPX submitted, which are not the subject of a motion to strike. This Court considered only the statements of the actual declarants. Consequently, Cruz's motion to strike is **DENIED** [Doc. No. 34].

    B.    <u>SPX's Motion to Strike</u>

With regards to SPX's motion to strike, because this Court has decided that SPX is entitled to summary judgment even after considering all of Cruz's offered evidence, SPX's motion to strike is **DENIED AS MOOT** [Doc. No. 37].

**II.**    **ANALYSIS**

---

[1] This Court did consider paragraph 14 of Gaff's affidavit, but this Court did not consider any of the evidence in that paragraph that deals with a statement made by another person for the truth of the matter asserted. This Court only relied on the statement in paragraph 14 by Gaff that she herself observed the log and found no entry. This part of paragraph 14 is a personal observation by Gaff herself of which she had personal knowledge

2

A.      Facts

SPX is a global, multi-industry company that provides various industrial products and services and operates several manufacturing facilities in the country, including a facility in Pierceton, Indiana. (Def.'s Ex. 1, Aff. of Lisa Gaff ¶ 3). Cruz was an employee who began working for SPX at its Pierceton, Indiana facility on July 23, 2001. (Def.'s Ex. 3, Dep. of Efrain Cruz 52). Cruz was a maintenance technician on the night shift, and his responsibility was to maintain the die cast machines (DCMs). (Id. 53; Def.'s Ex. 2, Aff. of Mike Whitaker ¶ 8). While employed with SPX, Cruz received favorable employee reviews on evaluations, and he was employed long enough to earn several raises. (Pl.'s App. 5, 7, 18-40).

SPX provides its employees with a handbook that contains a discipline policy. (Gaff Aff. ¶ 7). The policy classifies misconduct into three categories of type A, type B, and type C with A being the most serious and C being the least serious.[2] (Id. ¶ 7). Type A offenses can result in termination or in suspension with any future offenses resulting in termination. (Id. ¶ 7,8; Truitt Aff. ¶ 13; Def.'s Ex. 1-D 3; Pl.'s App. 43). Furthermore, the handbook states, "[a]ny associate involved in misconduct . . . or other forms of inappropriate behavior subject[s] [himself] to the disciplinary processes (up to and including termination of employment)." (Def.'s Ex. 1-A 1).

On June 25, 2004, Cruz and another maintenance technician, Nathan Ybarra (Ybarra), were repairing one of the DCM's when they committed a type A violation. (Gaff Aff. ¶ 13; Def. Ex 1-A 2; Gaff Aff. ¶ 7; Cruz Dep. 135). Cruz and other workers are required to follow certain safety precautions, such as a 'lockout' procedure when they are working on a DCM. (Whitaker Aff. ¶ 11; Cruz Dep. 134, 143; Gaff Aff. ¶ 13). The 'lockout' procedure requires employees to

---

[2]The handbook states that its list of potential violations is not exhaustive. (Gaff Aff. ¶ 7).

disable hazardous energy from a machine prior to performing maintenance on it. (Whitaker Aff. ¶ 11). While Cruz and Ybarra were working on a DCM, human resources coordinator Gaff observed that they had failed to 'lock out' the machine. (Gaff. Aff. ¶ 9-10). When approached, Cruz acknowledged that he had failed to 'lock out' the machine. (Cruz Dep. 134-36). Gaff suspended both Cruz and Ybarra for five days and notified them that any further incidents of misconduct would be cause for further discipline or termination. (Gaff Aff. ¶ 13).[3]

On February 17, 2005, Cruz committed more infractions. (Pl.'s App. 45; Gaff Aff. ¶ 14; Cruz Dep. 173, 177). This time, Cruz was again repairing a DCM, but he failed to complete the repair by the end of his shift. (Cruz Dep. 184-85). Cruz told the maintenance specialist Mike Whitaker (Whitaker) he had not finished the job, and Whitaker told Cruz to record the problem in the daily log so the next shift would know of the job and finish it. (Whitaker Aff. ¶ 14). However, the next shift maintenance specialist, Flesher, found no entry in the daily log, and as a result, was not aware of the uncompleted repair to the DCM. (Def.'s Ex. 4, Aff. of Kurt Flesher ¶ 10).

Later that day, Flesher discovered that the pit below the DCM that Cruz had been repairing had about 85 gallons of hydraulic fluid in it. (Id. ¶ 7, 8, 10). The standard practice with repairs of this type is to close the hydraulic fluid valves prior to working on the hydraulic system of a DCM to prevent the loss of unnecessary hydraulic fluid. (Id.). When asked, Cruz admitted he failed to close the hydraulic fluid valves. (Cruz Dep. 181). Concerning the failure

---

[3]Ybarra, who was cited for the same class A violation as Cruz in June of 2004, also committed another class C violation in March of 2005. (Cruz Aff. ¶ 11-13). However, unlike Cruz, Ybarra was not terminated, even though SPX originally had intended to terminate him. (Id. ¶ 13).

to make the appropriate entry into the log, Cruz claimed he had recorded that the DCM needed continued repair in the log but that someone had erased that record. (Id.). Cruz was cited for two class C violations: failure to maintain work standards and carelessness or poor workmanship. (Pl.'s App. 45).

Gaff investigated the hydraulic fluid incident and did not find Cruz's daily log entry that the DCM needed further repair. (Gaff. Aff. ¶ 14). Gaff informed divisional human resource manager Truitt of the situation. (Id. ¶ 17). Truitt alone had the authority to terminate employees at the Piercton, Indiana facility. (Def.'s Ex. 5, Aff. of Iris Truit ¶ 2). Given Cruz's prior suspension and considering he committed two class C violations with the hydraulic fluid incident, Truitt decided to terminate him. (Id. ¶ 7). Consequently, on February 23, 2006, Gaff met with Cruz and informed him that he was terminated for failure to maintain work standards, carelessness, and poor workmanship. (Gaff Aff. ¶ 18). Cruz now claims that he was terminated because of his national origin and that the stated reasons, the type A and C violations, are merely pretextual.

B.  Summary Judgment Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986);

King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986);  Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Services Co., 391 U.S. 253, 289 (1968)).

C.   SPX's Motion for Summary Judgment

This case is strikingly similar to Davis v. Conway Transp. Express, Inc., 368 F.3d 776, 783 (7th Cir. 2004), in which the Seventh Circuit observed the appellant, "appears to have simply collected the sum total of all the unpleasant events in [his] work history . . ., dumped them into the legal mixing bowl of this lawsuit, set the Title VII-blender to puree and poured the resulting blob on the court."  Though not well argued, Cruz's sole allegation appears to be that SPX terminated his employment because of his national origin in violation of Title VII.  To prove discrimination, Cruz may either offer direct evidence of national origin discrimination or he may use the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden shifting method.  Velez v. City of Chi., 442 F.3d 1043, 1049 (7th Cir. 2006).

   1.   Direct Method

Direct evidence shows an employer's intent without relying on inference or presumption. Velez, 442 F.3d at 1049; Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997).

Direct evidence is what the defendant said or did in the specific employment decision to terminate the employee. Plair, 105 F.3d at 347. Direct evidence can either be 1) an admission by the decision maker that his actions were based on the prohibited discrimination or 2) a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action. Davis, 368 F.3d at 783; Chiaramonte v. Fashion Bed Group, Inc., 129 F.3d 391, 396 (7th Cir. 1997); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000).

      a.      Cruz Fails to Present Direct Evidence by the Decision Maker

Cruz has failed to present any direct evidence that the decision maker terminated him based upon his national origin. First, Truitt was the decision maker, and she had the exclusive authority to terminate Cruz. (Truitt Aff. ¶ 2, 7). Cruz has not presented any evidence that Truitt based her decision to terminate him because of his national origin. Also, assuming that Gaff is also a decision maker, Cruz fails to present any evidence that Gaff admitted verbally or through acts that she discriminated against Cruz because of his national origin.[4]

Cruz claims the officer manager Bruce Turner (Turner) stated he would fire a Puerto Rican before he allowed him on the day shift. (Cruz Aff. ¶ 3). Cruz also claims that shift leader Kurt Flesher (Flesher) made similar derogatory statements. (Cruz Aff. ¶ 4; Blagojevic Dep 40). Cruz appears to argue that these constitute direct evidence that a SPX decision maker admitted to discriminating against Cruz based on his national origin.

---

[4] The parties dispute whether Gaff is actually a decision maker, but this Court will assume that Gaff contributed to the decision with Truitt.

However, the comments attributed to group leader Flesher and manager Turner do not constitute direct evidence. Under Rozskowiak v. Vill. of Arlington Heights, 415 F.3d 608, 612 (7th Cir. 2005), if someone who contributed to the employment decision made derogatory comments, it may be possible to infer that the decision makers were influenced by those derogatory comments or remarks. However, while group leader Flesher and manager Turner may have made derogatory statements about Cruz based on his national origin, Cruz does not offer any evidence that these two contributed to the decision to discharge him. (Cruz Aff. 3, 4). As the non-moving party for summary judgment, Cruz must present at least some evidence that there is an issue of whether these men affected the determination, but he has offered none. In fact, Cruz has not offered any direct evidence of discrimination by the decision maker or anyone else in the decision making process.

        b.        <u>Cruz Fails to Establish a Mosaic that Points to Discrimination</u>

In the remainder of Cruz's arguments, he points to a variety of circumstantial facts as direct evidence of discrimination. Cruz indicates fellow co-workers made vile and degrading comments about him based on his national origin.[5] (Pl.'s App. 1, 47; Aff. of Efrain Cruz 3, 4). Also, Cruz claims that other non-Caucasian workers were subject to similar derogatory statements. (Pl.'s App. 47). Finally, Cruz claims the bathroom walls were full of racial slurs. (Pl.'s App. 60, Blagojevic Dep. 56). Cruz seems to argue that these facts constitute a mosaic of

---

[5] Cruz alleges fellow employees called him a, "fucking Puerto Rican," a "spick," a "lazy wetback," a "brown skin," and a Mexican. (Pl.'s App. 1-3, Aff. of Efrain Cruz ¶ 4). Cruz also claims the same employees called another worker of Serbian descent a "sandnigger." (Pl.s App. 47, Dep. of John Blagojevic 36).

8

circumstantial evidence that points directly to his national origin as the reason for his termination.

However, this argument too is insufficient.  Discriminatory treatment by co-workers is not part of the mosaic of circumstantial evidence that can prove discriminatory conduct.  Davis, 368 F.3d at 784; Rozskowiak, 415 F.3d at 612 ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory.")  There must be a nexus between the bigotry and an adverse employment action. Id.  While the comments of Cruz's co-workers and the racial slurs on the bathroom walls may have been vile and derogatory, Cruz has not provided any evidence that the co-workers who made the alleged derogatory statements effected the employment decision.  Without evidence that the derogatory statements, or their authors, somehow impacted the decision maker who discharged Cruz, there is no link between the statements and Cruz's termination.  Simply put, the derogatory statements and ethnic slurs cannot be imputed to the decision maker.  Consequently, the comments do not constitute a mosaic of evidence that points to discrimination as the reason for the termination.

        c.      <u>SPX's  Decision to Retain Ybarra is not Direct Evidence</u>

Cruz's final assertion of direct evidence is SPX's treatment of Ybarra.  Cruz claims that Ybarra committed a class C infraction after Cruz was discharged.  (Cruz Aff. ¶ 7-13).   However, unlike Cruz, Ybarra was not discharged.  (Id. ¶ 13).   Cruz claims SPX was about to terminate Ybarra, but SPX decided not to terminate him because the EEOC notified SPX that a claim had been filed, which caused SPX to decide not to terminate Ybarra.  (Id. 7-13).  Cruz claims this

9

treatment of Ybarra's violation constitutes direct evidence that he was terminated because of his national origin.

This Court cannot agree with Cruz.  The two decisions, to terminate Cruz and to retain Ybarra, are separate and distinct, and Cruz has offered no evidence to show they are linked.  Cruz wants this Court to infer that the retention of Ybarra is evidence of SPX's discriminatory intent with him.  This requires both a leap in logic and a blind eye to other evidence that indicates the two decisions are separate and distinct.

Furthermore, SPX's decision to retain or terminate Ybarra does not constitute direct evidence of SPX's motion to terminate Cruz.  See Davis, 368 F.3d at 783.  Even if SPX retained Ybarra because the EEOC contacted SPX, this decision does not constitute an admission that the decision maker terminated Cruz because of his national origin, nor does it constitute a mosaic of evidence that points directly to discrimination.  The decision to retain Ybarra does not constitute direct evidence that SPX terminated Cruz on the basis of his national origin.

Therefore, because there is no evidence that a decision maker of SPX discriminated on the basis of Cruz's national origin, and because Cruz has failed to establish a mosaic of evidence that points directly to discrimination, Cruz has failed to present direct evidence of a Title VII violation.  Having failed to establish sufficient facts from which a reasonable jury could find direct evidence of discrimination, Cruz is left with but one other theory upon which to rest his case.

2.      Burden Shifting

Under the burden shifting method Cruz must establish by a preponderance of the evidence that 1) he was a member of a protected class, 2) similarly situated employees outside of

the protected class were treated more favorably, 3) he suffered a materially adverse employment action, and 4) he performed his job satisfactorily.  Velez, 442 F.3d at 1049-50 (citing O'Neal v. City of Chi., 392 F.3d 909, 911 (7th Cir. 2004)); see also McDonnell Douglas Corp., 411 U.S. at 802; Williams v. Williams Elecs., Inc., 856 F.2d 920, 922-23 (7th Cir. 1988).  If these elements are established, the burden shifts to SPX to articulate a non-discriminatory justification for its action.  Velez, 442 F.3d at 1050.  If SPX offers a non-discriminatory justification, Cruz is still required to present sufficient evidence to create a triable issue concerning whether SPX's proffered reason is merely pretextual.  O'Neal, 392 F.3d 909, 911 (7th Cir. 2004).

          a.        Cruz Fails to Establish a Prima Facie Case

The parties do not dispute that Cruz is in a protected class because of his national origin, nor do the parties dispute that Cruz suffered an adverse employment consequence because he was terminated.  However, the parties dispute whether similarly situated employees were treated more favorable and whether Cruz performed his job satisfactorily.  Even assuming that Cruz could establish that similarly situated employees were treated more favorably, and this Court believes Cruz could not, his claim fails because he cannot show that he performed his job satisfactorily.

One must perform his job to the employer's legitimate expectations at the time of termination.  Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004).  SPX expected its employees to follow safety rules, comply with work standards, and perform quality work. (Flesher Aff. ¶ 20; Cruz Dep. 79, 134, 143; Gaff Aff. ¶ 13).  For example, workers were expected to 'lock out' the DCM's before working on them, and Cruz admitted that he failed to 'lock out' a DCM while working on it.  (Flesher Aff. ¶ 5, 20; Gaff Aff. ¶ 9-10; Cruz Dep. 134-

11

36). Also, the standard practice was to close the hydraulic valves prior to working on the hydraulic system of a DCM. (Flesher Aff. ¶ 7). However, Cruz admits he failed to close the hydraulic valves, which caused about 85 gallons of expensive hydraulic fluid to spill out and be lost. (Cruz Dep. 181; Flesher Aff. ¶ 8, 10). Both of these incidents indicate that Cruz was not performing his job satisfactorily.

Cruz claims that he did perform his job satisfactorily. Cruz indicates that he had received several raises by the end of his employment. (Pl.'s App. 5, 7). Further, Cruz received solid evaluations during his employment. (Pl.'s App. 18-40). Cruz also claims that he only committed one prior safety violation before the hydraulic fluid incident that resulted in his termination. (Pl.'s App. 41-42). However, even though Cruz may have received good performance evaluations and raises in the past, those matters are irrelevant because Cruz must show he was meeting expectations at the time of his termination. See Luckie, 389 F.3d at 715; Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 545-46 (7th Cir. 2002). Cruz has failed to offer any evidence that he was performing his job satisfactorily at the time of his termination.

Consequently, even though Cruz may be able to point to another worker who was similarly situated but treated more favorably, Cruz cannot establish a prima facie case because he has not submitted evidence to create a genuine issue of whether he was legitimately meeting SPX's performance expectations at the time of termination.

      b.      Cruz Fails to Offer Evidence that SPX's Decision was Pretextual

However, even if Cruz could establish a prima facie case of national origin discrimination, he must still posit evidence that suggests SPX's proffered reason is merely

pretexutual.  SPX has provided a non-discriminatory reason for discharging Cruz based on his poor performance.[6]  Cruz, then, has the burden to present some evidence to create a genuine issue of whether SPX's proffered reason is merely a pretext.  O'Neil, 392, F.3d at 911.  Pretext means something worse than a business error, such as deceit to cover one's tracks.  Davis, 368 F.3d at 784.  The focus of the pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well considered.  Id.

　　　　First, Cruz asserts that SPX was not justified to discharge him because the employee handbook did not specifically list class C violations as a terminable event and because he was not warned he might be terminated.  Cruz's argument is unpersuasive because he misconstrues the evidence.  SPX provided its employees with a handbook that specifically stated, "[a]ny associate involved in misconduct . . . or other forms of inappropriate behavior subject themselves to the disciplinary processes (up to and including termination of employment)."  (Def.'s Ex. 1-A 1).  Plaintiff's class A and class C violations for failing to follow safety precautions, carelessness, and poor workmanship, according to the employee handbook, could have resulted in termination.  Even if Cruz never received a warning that he might be terminated and even though the handbook did not require Cruz to be terminated, SPX certainly had discretion to terminate Cruz.  Cruz's argument appears to question whether SPX was justified when it utilized its discretion to terminate him.  This Court will not question whether SPX's decision to terminate

---

[6] As discussed above, SPX claims that Cruz failed to perform his job satisfactorily.  Cruz failed to follow standard practices by not closing the hydraulic valves and Cruz previously had failed to follow safety procedures.  Based on these two incidents, SPX has provided a non-discriminatory reason for discharging Cruz.

13

Cruz was wise, accurate, or well considered. Davis, 368 F.3d at 784. Instead, Cruz must present some evidence that SPX's reason for terminating Cruz was not honest, which he has failed to do.

Cruz claims that the fact that he and other non-Caucasians were subject to derogatory statements constitutes evidence of SPX's dishonesty. However, all of the comments were made by Cruz's co-workers and not by any employees who made the decision of whether he should be discharged. (Pl.'s App. 1, 47). As stated before, the ethnic slurs and derogatory statements cannot be imputed to the decision makers. Cruz must provide some evidence, and he has provided none that the derogatory statements are linked to the decision maker. See Davis, 368 F.3d at 786. Otherwise, it is simply an illogical leap to assume the decision makers were motivated to terminate Cruz based on his national origin. Id.

Cruz's only argument is that Gaff and Truitt, the decision makers, knew of the derogatory statements. However, assuming the decision makers knew of the derogatory statements, knowledge of the derogatory statements alone does not suggest the decision makers were motivated to terminate Cruz based on his national origin. Cruz must present some evidence that suggests the decision makers were motivated to terminate Cruz because of the derogatory comments, such as the decision makers ratifying, participating, or approving of the derogatory statements. Cruz has not presented any such evidence. As a result, Cruz has failed to establish the link between the derogatory statements and the decision makers, which means Cruz has failed to provide evidence that would allow a reasonable jury to infer that Cruz's termination was motivated by national origin.

Because Cruz cannot establish a prima facie case of national origin discrimination, or that SPX's legitimate reasons for termination were merely a pretext, Cruz has not carried his burden

to maintain a claim under the burden shifting method.  Cruz has not presented any evidence, either directly or indirectly, to establish that a genuine issue of fact exists.  Consequently, SPX is entitled to summary judgment.  SPX's motion is **GRANTED**.

### III.    CONCLUSION

Cruz's motion to strike is **DENIED** [Doc No. 34] and SPX's motion to strike is **DENIED AS MOOT** [Doc. No. 37].  With regards to SPX's motion for summary judgment, Cruz has not offered direct evidence of national origin discrimination, and Cruz has failed to establish a prima facie case under the burden shifting method.  Consequently, Cruz has not established that there is a genuine issue of fact as to whether SPX discriminated based on Cruz's national origin.  SPX's motion for summary judgment is **GRANTED** [Doc. No. 29].  The clerk is **ORDERED** to enter judgment in favor of SPX.

**SO ORDERED.**

Dated this 30th Day of October, 2006.

        S/Christopher A. Nuechterlein
        Christopher A. Nuechterlein
        United States Magistrate Judge